Brent H. Blakely (SBN 157292)
brentblakely@earthlink.net
Cindy Chan (SBN 247495)
cchan@blakelylawgroup.com
BLAKELY LAW GROUP
915 North Citrus Avenue
Hollywood, California 90038
Telephone: (323) 464-7400
Facsimile: (323) 464-7410

*Attorneys for Plaintiff Coach, Inc.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| COACH, INC., a Maryland Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>ABNER'S FASHION, an unknown business entity; ANABEL COLLECTIONS, INC., a California Corporation; BELLAGIO USA, an unknown business entity; BHAG'S OF NEW YORK dba LINE HANDBAGS, an unknown business entity; BNB HANDBAGS, an unknown business entity; BOLSA BOLSA MEZON, INC., a California Corporation; BONITA TRADING CO., an unknown business entity; MAX PURSE, LLC, a California Corporation; MEZON, INC., a California Corporation; MOKA HANDBAGS, an unknown business entity; NEW FASHION, an unknown business entity; NEXT PAGE FASHION CORP., a California Corporation; PRINCESS PURSE, an unknown business entity; S.H. TRADING, an unknown business entity; SILVER SACK LLC, a California Corporation; TRIPLE GEAR INC. dba MW SALES dba TRACK, a California Corporation; and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. 08-8191 AHM (RZx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE LIABILITY OF DEFENDANTS BELLAGIO USA, BOLSA BOLSA MEZON, INC., MAX PURSE, LLC, MOKA HANDBAGS, and PRINCESS PURSE FOR TRADEMARK INFRINGEMENT**<br><br>Hearing:<br>Date:          December 7, 2009<br>Time:          10:00 a.m.<br>Room:         14<br><br>Discovery Cut-Off:          09/01/2009<br>Motion Filing Cut-Off:    10/01/2009<br>Pre-Trial Conference:     11/16/2009<br>Jury Trial:                       12/01/2009<br><br>**Honorable A. Howard Matz** |

# TABLE OF CONTENTS

I.   INTRODUCTION ..............................................................................................1

II.  STATEMENT OF FACTS ................................................................................2

    A.   Coach's Trademarks................................................................................2

    B.   Defendants' Infringement of the Coach Marks.......................................3

III. LEGAL ARGUMENT.......................................................................................4

    A.   Standard of Review for a Summary Judgment Motion...................4

    B.   Coach is Entitled to Summary Judgment as to the Issue of Liability for Trademark Infringement against Defendants .............5

        1.   Validity of the Coach Marks................................................6

        2.   Likelihood of Confusion is Presumed Where Goods are Counterfeit...........................................................................6

        3.   Defendants' Products Bear Marks Identical and/or Substantially Indistinguishable from the Coach Marks........9

            (a)   Strength of Coach's CC Design.................................10

            (b)   Relatedness of Goods .................................................11

            (c)   Similarity of Marks.....................................................11

            (d)   Evidence of Actual Confusion....................................11

            (e)   Marketing Channels Used..........................................12

            (f)   Degree of Purchaser Care ..........................................12

            (g)   Defendants' Intent in Selecting the Mark...................12

            (h)   Likelihood of Expansion of Product Lines.................13

        4.   *Strict Liability for Violations of the Lanham Act*.................13

IV.  COACH IS ENTITLED TO A PERMANENT INJUNCTION PURSUANT TO 15 U.S.C. § 1116 .......................................................13

V.   CONCLUSION................................................................................14

# TABLE OF AUTHORITIES

**CASES**

AMF, Inc. v. Sleekcraft Boats,
  599 F.2d 341, 348-49 (9th Cir. 1979) .................................................................... 6

Brookfield Communications v. West Coast Entertainment,
  174 F.3d 1036 (9th Cir. 1999) ...................................................................... 5, 9, 11

Celotex Corp. v. Catreft,
  477 U.S. 317, 327 (1986) ........................................................................................ 5

Century 21 Real Estate Corp. v. Sandlin,
  846 F.2d 1175, 1179 (9th Cir. 1988) .................................................................... 10

Downing v. Abercrombie & Fitch,
  265 F.3d 994, 1007 (9th Cir. 2001) ...................................................................... 10

E. & J. Gallo Winery v. Pasatiempos Gallo,
  905 F. Supp. 1403, 1412 (E.D. Cal. 1994) ...................................................... 10, 12

Fila U.S.A., Inc. v. Kim,
  884 F. Supp. 491, 494 .............................................................................................. 7

Fleischmann Distilling Corp. v. Maier Brewing Co.,
  314 F.2d 149, 156 (9th Cir. 1963) ........................................................................ 12

Gucci America, Inc. v. Action Activewear Inc.,
  759 F. Supp. 1060 (S.D.N.Y. 1991) ..................................................................... 10

Gucci America, Inc. v. Duty Free Apparel,
  286 F. Supp. 2d 284 (S.D.N.Y. 2003) .................................................................... 7

Henri's Food Products Co. v. Kraft Inc.,
  717 F.2d 352, 359 (9th Cir. 1983) ........................................................................ 13

Kyjen Co., Inc. v. Vo-Toys, Inc.,
  223 F.Supp.2d 1065 (C.D.Cal. 2002) ................................................................... 10

Matsushita Elec. Indust. Co. v. Zenith Radio Corp.,
  475 U.S. 574, 587 (1986) ........................................................................................ 5

Nissan Motor Co. v. Nissan Computer Corp.,
  378 F.3d 1002 (9th Cir. 2004) .............................................................................. 10

Pepsico, Inc. v. Cal. Sec. Cans,
  238 F. Supp. 2d 1172 (C.D. Cal. 2002) ................................................................ 13

Phillip Morris U.S.A. Inc. v. Shalabi,
  352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004) ................................................. 6, 13

Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc.,
  592 F. Supp. 648, 650 (D. Mass. 1984) .................................................................. 7

Polo Fashions, Inc. v. Clothes Encounters,
 1985 U.S. Dist. LEXIS 17838, 8, 227 U.S.P.Q. 327 (N.D. Ill. 1985) .................. 7
Saks & Co. v. Hill, d.b.a., Sacks Thrift Avenue,
 843 F. Supp. 620 (S.D. Cal. 1993) ............................................................... 11
Suarez Corp. Industries v. Earthwise Technologies, Inc.,
 2008 WL 4934055 (W.D. Wash., 2008) ......................................................... 9
Taubman Co. v. Webfeats,
 319 F.3d 770, 775 (6th Cir. 2005) ................................................................ 13
Toho Co. v. William Morrow Co.,
 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998) ................................................. 5
Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP,
 593 F.Supp.2d 1153 (S.D.Cal. 2008) ............................................................ 5

**STATUTES**

15 U.S.C. §1065 ................................................................................................ 12
15 U.S.C. §1114 ................................................................................................ 13
15 U.S.C. §1116(a) ........................................................................................... 13
15 U.S.C.A. §1127 .............................................................................................. 7

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As by now it is well known that an illicit multimillion dollar industry has developed in the United States involving the unlawful importation (primarily although not exclusively from China and neighboring countries), distribution, offer for sale and sale of merchandise bearing counterfeits and/or infringing imitations of the trademarks and names of legitimate manufacturers and distributors. United States Congressman Carlos J. Moorhead has estimated that, while in 1982 the annual cost of counterfeiting and piracy to U.S. businesses was about $5.5 billion per year, it had risen to $200 billion by 1996. [See Cong. Rec. H5778, June 4,1996, Remarks of Cong. Moorhead, reprinted at 52 P.T.C.J. 184 (June 6, 1996)]

This counterfeiting industry has often targeted Plaintiff Coach, Inc. and its family of marks, including Plaintiff's famous CC Design. Such counterfeiting irreparably injures Coach and the public. For instance, consumers believe they are purchasing authorized Coach products when in fact they are buying substandard counterfeit products. When these infringing products prematurely break or fade, consumers question the quality of Coach's products. Furthermore, these infringing products dilute the value of Coach's Marks.

Defendants Bellagio U.S.A., Max Purse, LLC, Bolsa Bolsa Mezon, Inc., Max Purse, LLC, Moka Handbags, and Princess Purse (collectively "Defendants") have introduced into the stream of commerce handbags, wallets, and luggage pieces bearing marks identical and/or confusingly similar to Coach's federally registered trademarks. These infringing items were seized pursuant to a Seizure Order issued by this Court on December 18, 2009. Furthermore, this Court, in issuing a Preliminary Injunction Order, has already ruled that there is a likelihood of confusion between the items that were offered for sale and/or sold by Defendants and Coach's authentic goods. Thus, summary judgment on the issue of liability for trademark infringement against Defendants is appropriate.

## II. STATEMENT OF FACTS

### A. Coach's Trademarks

Coach was founded more than sixty years ago as a family-run workshop in a Manhattan loft. Since that time, Coach has been engaged in the manufacture, marketing, and sale of fine leather and mixed material products including handbags, wallets, travel cases, briefcases, planners and diaries, leather goods, watches, eyewear, footwear, apparel, and accessories. (Statement of Uncontroverted Facts ("UF") filed concurrently herewith, ¶ 1) Coach Services, Inc., Coach, Inc.'s wholly owned subsidiary (hereinafter collectively "Coach"), is the worldwide owner of the trademark "COACH" and various composite trademarks and assorted design components, including but not limited to the Coach Lozenge Mark (U.S. Reg. Nos. 1,070,999; 1,309,779, and 2,045,676) and the Coach Heritage Mark (U.S. Reg No. 3,441,671) (hereinafter collectively the "Coach Marks"). (UF, ¶¶ 2 – 4)

Amongst the many Coach Marks, one of the most well known and recognized mark is Coach's "CC Design." Coach has used the CC Design in association with the sale of goods since as early as 2001. The CC Design was first registered at the U.S. Patent and Trademark Office in 2002. (UF, ¶ 5) The CC Design is registered for various goods, including but not limited to International Class 18 for handbags, purses, shoulder bags, waist pouches, luggage, and wallets, as well as International Class 24 for fabric for use on handbags and luggage. (UF, ¶ 5) In 2003, Coach begun using a variation of the CC Design in its "Optic Signature" line of handbags ("CC Optic Design"). The CC Optic Design was registered in 2005. (UF, ¶ 6)

On the inside of every Coach handbag is a patch bearing the word mark "COACH" and information regarding the bag itself ("Coach Storypatch.") The Coach Storypatch mark was registered in 2007. (UF, ¶ 7)

Coach has long been manufacturing and selling in interstate commerce high quality products under the Coach Marks. (UF, ¶ 9) These registrations are valid and subsisting and are incontestable. (UF, ¶ 10) Through longstanding use, advertising and

registration, the Coach Marks have achieved a high degree of consumer recognition and constitute famous marks. (UF, ¶ 11)

Coach has achieved sales volumes of over three billion dollars annually from goods bearing the Coach Marks. As such, the Coach Marks and the goodwill associated therewith are valuable assets of Coach. (UF, ¶ 12) Coach and its predecessors have expended over a hundred million dollars in advertising, promoting, and marketing goods featuring the Coach Marks. (UF, ¶13) Due to Coach's long use, extensive sales, and significant advertising and promotional activities, the Coach marks have achieved widespread acceptance and recognition among the consuming public and the trade throughout the United States. The arbitrary and distinctive Coach marks serve to identify Coach as the source/origin of the goods on which it appears. (UF, ¶¶ 14 – 15) In addition to selling its products on a retail basis, Coach also sells to other distributors and retailers on a wholesale basis. (UF, ¶ 16)

### B. Defendants' Infringement of the Coach Marks

In the Fall of 2008, Coach's investigators, Intellectual Property Enforcement Company, Inc. ("IPEC"), conducted a large scale investigation in the fall of 2008 into the sale, offering for sale, advertisement and distribution of leather goods and accessories bearing counterfeit reproductions of the Coach Marks. (UF, ¶ 17) Products obtained from Defendants were reviewed by Coach's Intellectual Property Manager, April Pyatt, and determined to be infringing. (UF, ¶¶ 21 – 26; 29 – 31; 35 – 40; 43 – 46; and 49 – 52) While most of the items contained marks confusingly similar to the CC Design, items from Bellagio U.S.A. contained exact reproductions of not only the CC Design, but also the word mark "COACH." (UF, ¶¶ 22 – 23)

Consequently, on December 11, 2008, Plaintiff filed a Complaint against the various entities from whom the infringing products were obtained. Plaintiff simultaneously applied *ex parte* for a Temporary Restraining Order, Order to Show Cause re Preliminary Injunction, Seizure Order, and Order for Expedited Discovery (the "Seizure Order"), which this Court thereafter granted on December 19, 2008 as to

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY ADJUDICATION**

1  Defendants Abner's Fashion, Anabel Collections, Inc., Bellagio USA, BHAG's of
2  New York dba Line Handbags, Bonita Trading Co., Max Purse, LLC, Mezon, Inc.,
3  Moka Handbags, New Fashion, Next Page Fashion Corp., Princess Purse, Triple Gear
4  Inc. dba MW Sales and Track, and John Gomez.  (UF, ¶ 53)
5       On December 23, 2008, Coach executed the seizure order as to the
6  aforementioned Defendants.  (UF, ¶ 55)  Infringing merchandise was seized from
7  Defendants, including Bellagio USA, Max Purse, LLC, Mezon, Inc[1]. (1135 South
8  Santee Street location only), Moka Handbags, and Princess Purse.  (UF, ¶¶ 56 – 64)
9  Coach's Intellectual Property Manager, April Pyatt, have reviewed all the merchandise
10  seized from Defendants and have determined them to be infringing.  (UF, ¶ 65)  The
11  Court held an Order to Show Cause hearing regarding Coach's request for a
12  Preliminary Injunction on January 5, 2009, and determined that the marks on
13  Defendants' goods indeed created a likelihood of confusion between Defendants'
14  products and Coach's products, and thus issued a Preliminary Injunction Order against
15  Defendants.  (UF, ¶¶ 66 – 67)
16       Since this Court issued the Preliminary Injunction, Defendants Max Purse and
17  Moka Handbags have continued to sell infringing Coach products on their respective
18  websites – www.maxpurse.com. and www.mokahandbags.com.  (UF, ¶¶ 69, 72)

### III. LEGAL ARGUMENT

#### A. Standard of Review for a Summary Judgment Motion

21       The summary judgment procedure aims to discover whether there is evidence
22  requiring the fact weighing process of a trial.  Summary judgment is appropriate "if the
23  pleadings, depositions, answers to interrogatories and admissions on file, together with

---

[1] At the time the Complaint was filed, Bolsa Bolsa Mezon, Inc. operated its business from two retail stores – "Bolsa Bolsa Handbags," located at 1017 South Santee Street; and Mezon Handbags (erroneously sued as Mezon, Inc.), located at 1135 South Santee Street. (UF, ¶¶ 33 – 34)  Defendants Bolsa Bolsa Mezon, Inc. and Mezon, Inc. shall hereinafter be collectively referred to as "Mezon."  Bolsa Bolsa Handbags is no longer in business.

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [Fed.R.Civ.P. 56(c)] The United States Supreme Court has observed that summary judgment and summary adjudication have proven a beneficial approach to reduce the burden on our federal court system. [See Celotex Corp. v. Catreft, 477 U.S. 317, 327 (1986)]

The burden on the moving party is satisfied by a showing that there is an absence of evidence to support the nonmoving party's case. [Celotex at 322] Once the moving party meets this initial obligation, the nonmoving party may not rest on mere allegations or denials in the pleadings but must "come forth with 'specific facts' showing that there is a genuine issue for trial." [Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)] A summary judgment motion may be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." [Fed.R.Civ.P. 56(c)]

Pursuant to Rule 56, "[a]n interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages." [Fed.R.Civ.P. 56(d)(2); see also Vaxiion Therapeutics, Inc. v. Foley & Lardner LLP, 593 F.Supp.2d 1153, 1164 (S.D.Cal. 2008)]

### B. Coach is Entitled to Summary Judgment as to the Issue of Liability for Trademark Infringement against Defendants

In order to succeed on a trademark infringement claim, a plaintiff must establish: 1) that it has a valid, protectable trademark, and 2) Defendants subsequently and without authorization used a similar mark likely to cause consumer confusion, deception or mistake. [Brookfield Communications v. West Coast Entertainment, 174 F.3d 1036, 1046 (9th Cir. 1999); Toho Co. v. William Morrow Co., 33 F. Supp. 2d 1206, 1210 (C.D. Cal. 1998)]

/ / /
/ / /

### 1. Validity of the Coach Marks

Coach has federal registrations for all the marks which it seeks to protect in this matter. (UF, ¶¶ 3 – 6, and 8)  The federal registration of a trademark with the U.S. Patent and Trademark Office constitutes "prima facie evidence of the validity of the registered mark, ownership of the mark and of the registrant's exclusive right to use the registered mark." [15 U.S.C. §§ 1057(b), 1115(a); Brookfield, 174 F.3d at 1046-47] Coach Services, Inc., the wholly-owned subsidiary of Coach, Inc., is the owner of all the registrations for the CC Design.  (UF, ¶ 2)  Defendant does not dispute the validity of any of the above registrations.

### 2. Likelihood of Confusion is Presumed Where Goods are Counterfeit

The Ninth Circuit has traditionally applied an eight factor balancing test in order to determine whether a defendant's infringement caused a likelihood of confusion. [See AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979)]  However, a summary judgment motion in a counterfeiting case is readily granted because there is no question that there has been a likelihood of confusion.  A counterfeiting case is of such a nature that it "indicates a strong likelihood of confusion." [Phillip Morris U.S.A. Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004)] "In cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination [of the factors] because counterfeit marks are inherently confusing." [Id.] "Multi-factored balancing is unnecessary in cases . . . where the defendant has misappropriated precise counterfeits of the plaintiff's trademarks on goods that compete with the trademark holder's own goods." [General Motors Corp. at 761  (In counterfeiting cases, "a likelihood of confusion is presumed when a defendant intentionally copies a trademark design with the intent to derive a benefit from the reputation of another.")][2]

---

[2] "The counterfeit merchandise is a duplicate for the genuine article.  Where a counterfeit item is virtually identical to the genuine item, the 'very purpose of the

While the Lanham Act's likelihood of confusion standard is predominantly factual in nature, the likelihood of confusion is presumed in a case where the defendant has manufactured, sold, or distributed counterfeit goods. [See Gucci America, Inc. v. Duty Free Apparel, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("counterfeits, by their very nature, cause confusion"); Philip Morris U.S.A. Inc. v. Felizardo, 2004 U.S. Dist. LEXIS 11154, *18 (S.D.N.Y. 2004) ("in cases involving counterfeit marks, it is unnecessary to perform the step-by-step examination of [the factors] because counterfeit marks are inherently confusing"); General Motors Corp. v. Autovation Technologies, Inc., 317 F. Supp. 2d 756, 761 (E.D. Mich. 2004) ("a likelihood of confusion is presumed when a defendant intentionally copies a trademark design")[3]]

The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark." [15 U.S.C.A. §1127] As J. Thomas McCarthy instructs, "A 'counterfeit mark' is a false mark that is identical with, or substantially indistinguishable from, the genuine mark. Often,

---

individuals marketing the cheaper [counterfeit] items is to confuse the buying public into believing that it is buying the true article.'" [Fila U.S.A., Inc. v. Kim, 884 F. Supp. 491, 494 (S.D. Fla. 1995)] Thus, in a counterfeiting case, the registered trademark holder need not prove intent to deceive in order to recover. [Polo Fashions, Inc. v. Branded Apparel Merchandising, Inc., 592 F. Supp. 648, 650 (D. Mass. 1984)] The rationale is that a defendant's use of a name or mark "cannot be justified by a claim of innocence, good faith, or lack of knowledge." [Polo Fashions, Inc. v. Clothes Encounters, 1985 U.S. Dist. LEXIS 17838, 8, 227 U.S.P.Q. 327 (N.D. Ill. 1985)] "Neither a finding of fraudulent intent, nor of bad faith . . . is required to establish liability for trademark infringement. . . . It is the objective fact of the infringement that is all important." [Id. at 7-8]

[3] In General Motors Corporation v. Autovation Technologies, Inc., the defendant, who was neither affiliated with nor authorized by GM to use the GM trademarks, sold products and parts that were counterfeits of the GM trademarks, such as foot pedals and replacement pedals. [General Motors, 317 F. Supp. 2d at 760] The court in stated that where a defendant has "misappropriated precise counterfeits of the plaintiff's trademarks on goods that compete with the trademark holder's own goods" the likelihood of confusion is presumed. [Id.]

counterfeit merchandise is made so as to imitate a well-known product in all details of construction and appearance so as to deceive customers into thinking that they are getting genuine merchandise." [J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, 4th Ed. (2003) (emphasis added)]

The marks that appear on Defendants' products are substantially indistinguishable from the Coach Marks that appears on authentic Coach products.

| Defendants' Products[4] | Authentic Coach Products |
|---|---|
| Bellagio U.S.A. | |
| Bolsa Bolsa Mezon, Inc | |
| Max Purse, LLC | |

---

[4] Products shown in the chart do not reflect all merchandise obtained from Defendants.

| Defendants' Products[4] | Authentic Coach Products |
|---|---|
| <br>**Moka Handbags** |  |
| <br>**Princess Purse** |  |

Furthermore, the repetition of the CC Design on Defendants' Products is in such a manner as to mimic authentic Coach products. (See Pyatt Decl., Ex. 2) Thus, all of these products should be deemed counterfeit, and summary judgment on Coach's 15 U.S.C. § 1114 claim should be granted.

### 3. Defendants' Products Bear Marks Identical and/or Substantially Indistinguishable from the Coach Marks

Even if the goods were not considered "counterfeit," an analysis of the Sleekcraft factors would still warrant summary judgment in favor of Coach. In fact, this Court has already determined that there is a likelihood of confusion between Coach's genuine products and Defendants' products. (UF, ¶ 66)

Where there is a "virtual identity of marks" used with the same type of product, "likelihood of confusion would follow as a matter of course." [Brookfield, 174 F.3d at 1056; *see also* Suarez Corp. Industries v. Earthwise Technologies, Inc., 2008 WL 4934055 (W.D. Wash., 2008) (maker of a space heater was entitled to summary

1  judgment on a trademark infringement claim it brought against the maker of another
2  heater where marks at issue were identical, and both manufacturers simultaneously
3  sold related products marketed through the Internet); Nissan Motor Co. v. Nissan
4  Computer Corp., 378 F.3d 1002, 1019 (9th Cir.2004) (affirming summary judgment
5  where the marks were "legally identical," the goods at issue were related, and the
6  marketing channels overlapped); Kyjen Co., Inc. v. Vo-Toys, Inc., 223 F.Supp.2d 1065
7  (C.D.Cal. 2002) (summary judgment on trademark infringement claim granted in favor
8  of plaintiff where plaintiff's "bungee" mark was infringed by competitor's use of same
9  term for similar product)

10  The eight factors to be considered under the traditional Sleekcraft balancing test
11  include the: 1) strength of the mark; 2) proximity or relatedness of the goods; 3)
12  similarity of the marks; 4) evidence of actual confusion; 5) marketing channels used;
13  6) type of goods and the degree of care likely to be exercised by the purchaser; 7)
14  defendant's intent in selecting the mark; and 8) likelihood of expansion of product
15  lines. [Sleekcraft at 348-49; Downing v. Abercrombie & Fitch, 265 F.3d 994, 1007
16  (9th Cir. 2001)]

17       **(a) Strength of Coach's CC Design**

18  A strong trademark is distinctive in that the public is aware of the mark and
19  associates that mark with a single business or source of supply. [E. & J. Gallo Winery
20  v. Pasatiempos Gallo, 905 F. Supp. 1403, 1412 (E.D. Cal. 1994)] Marks may be
21  strengthened by extensive advertising, length of time in business, public recognition,
22  and uniqueness. [Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1179 (9th
23  Cir. 1988)] A strong mark is "inherently distinctive" and is "afforded the widest ambit
24  of protection from infringing uses." [Sleekcraft at 349] Registered trademarks are
25  "presumed to represent the source [of the goods or services] in the minds of the
26  public." [Gucci America, Inc. v. Action Activewear Inc., 759 F. Supp. 1060, 1064
27  (S.D.N.Y. 1991)] Registered marks inherently possess a "secondary meaning,"
28

whereby the mark comes to identify "not only the goods but the source of those goods." [Id.]

The CC Design has been in use since 2001 and is registered for a number of goods and services, which stands as proof of the strength of the mark and its validity. By virtue of the wide renown acquired by the CC Design coupled with its geographic distribution and extensive sales of product under the CC Design, it has acquired secondary meaning in the mind of the purchasing public and has become famous.

### (b) Relatedness of Goods

Examples of "proximate" goods are those which complement one another, are sold to the same class of consumers, or are similar in use and function. [Saks & Co. v. Hill, d.b.a., Sacks Thrift Avenue, 843 F. Supp. 620, 623 (S.D. Cal. 1993)] Both Coach and Defendants are selling luggage, handbags, and related goods bearing marks identical and/or confusingly similar to the Coach Marks. Thus, the goods are indeed "related" for purposes of determining likelihood of confusion.

### (c) Similarity of Marks

As discussed above, the marks that appear on Defendants are identical and/or confusingly similar to the CC Design. In fact, the manner in which the infringing marks appear on Defendants' products mimic the manner in which the CC Design appears on Coach's authentic products. (UF, ¶¶ 61) Defendant Bellagio USA has offered for sale and sold products bearing exact reproductions of the "COACH" and Coach Heritage Marks as well. (UF, ¶¶ 22, 56)

### (d) Evidence of Actual Confusion

"The failure to prove instances of actual confusion is not dispositive against a trademark plaintiff, because actual confusion is hard to prove; difficulties in gathering evidence of actual confusion make its absence generally unnoteworthy." [Brookfield Communications v. West Coast Entertainment, 174 F.3d 1036, 1050 (9th Cir. 1999)] Moreover, Plaintiff need not prove actual confusion in order to prevail on a motion for summary judgment in a counterfeiting case. [Polo Fashions, Inc., 592 F. Supp. at 651]

The counterfeiting of Coach products undermines the reputation of the Coach trademarks and reduces the demand for genuine Coach products.  Given the striking similarity between Defendants' goods and authentic Coach goods, actual confusion among members of the public would be expected.

### (e)   Marketing Channels Used

"Similarity of trade channels does not require sales of both parties' goods by identical vendors, but only by the same type of distribution channels." [E. & J. Gallo Winery, 905 F. Supp. at 1413]   Like Defendants, Coach sells its products on both a wholesale and retail basis. (UF, ¶ 16) Furthermore, Coach products can be obtained online at www.coach.com, just as products from Moka Handbags, Mezon, Inc., and Max Purse can be obtained from their respective websites.  (UF, ¶¶ 69, 70, 72).  Thus, this factor weighs in favor of a finding of likelihood of confusion between Defendants' and Coach's products.

### (f)   Degree of Purchaser Care

In assessing likelihood of confusion, the standard used is the typical buyer exercising ordinary care, including "the ignorant, the unthinking and the credulous." [Fleischmann Distilling Corp. v. Maier Brewing Co., 314 F.2d 149, 156 (9th Cir. 1963)]  The degree of purchaser care is indeed quite low in this situation where Defendants are selling handbags, which are relatively less expensive.

### (g)   Defendants' Intent in Selecting the Mark

Defendant was on constructive notice as to Coach's rights to the CC Design based upon its various trademark registrations to said mark.  [15 U.S.C. §1065]  Due to the high degree of similarity between the marks which appear on Defendant's products and the CC Design, it is more than likely that selection of the infringing products was done with the intention of selling handbags which mimicked Coach's products.  In fact, many of the Defendants are in the business of selling "designer-inspired" products.  (UF, ¶¶68, 70 – 71)

### (h) Likelihood of Expansion of Product Lines

"A strong possibility that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." [Sleekcraft at 354] As discussed above, the products sold by Coach and Defendants are the same, and both sell on a retail and wholesale basis. Thus, there is already a conversion of product lines here that would warrant a finding of likelihood of confusion

After weighing all the factors set out by Sleekcraft, there is no doubt that there is a likelihood of confusion between Defendants' goods and those of Coach. Thus, summary adjudication should be granted in favor of Coach.

### 4. *Strict Liability for Violations of the Lanham Act*

Ignorance is no defense to violations of the Lanham Act. [15 U.S.C. §1114; Phillip Morris, 352 F.Supp. 2d at 1073] Indeed, "sellers bear strict liability for violations of the Lanham Act". [Henri's Food Products Co. v. Kraft Inc., 717 F.2d 352, 359 (9th Cir. 1983)] "Notably, as in the copyright realm, international infringement may lead to enhanced statutory damages, but is not required to prove defendant's liability." [Taubman Co. v. Webfeats, 319 F.3d 770, 775 (6th Cir. 2005)] Thus, Defendants' intent is irrelevant to this motion which is limited to the issue of Defendants' liability. Since it is clear that the products sold by Defendants infringe upon Coach's federally registered marks, the only question that remains is the appropriate remedy.

## IV. COACH IS ENTITLED TO A PERMANENT INJUNCTION PURSUANT TO 15 U.S.C. § 1116

"The Lanham Act gives the court 'power to grant injunctions according to the rules of equity and upon such terms as the court may deem reasonable, to prevent the violation' of a mark holder's rights." [Pepsico, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); 15 U.S.C. §1116(a)] As such, Coach requests that this Court order a permanent injunction against Defendants to enjoin them from using the Coach Marks in connection with the sale and offer for sale of infringing products.

## V. CONCLUSION

Based on the foregoing, Plaintiff Coach, Inc. respectfully request that this Court grant summary judgment in favor of Plaintiff against Defendants Bellagio USA, Max Purse, LLC, Bolsa Bolsa Mezon, Inc. Mezon, Inc., Moka Handbags, and Princess Purse on the issue of liability for trademark infringement.  Plaintiff further requests that this Court issue a permanent injunction pursuant to 15 U.S.C. § 1116.

DATED:    November 4, 2009            BLAKELY LAW GROUP

By:    /s/ Cindy Chan _____
       Brent H. Blakely
       Cindy Chan
       ***Attorneys for Plaintiff Coach, Inc.***